UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

FRANCIS HELMER,

                                    Petitioner,

 v.                                                              9:09-CV-487
                                                                 (GLS/ATB)
SUPERINTENDENT,

                                    Respondent.

FRANCIS HELMER, Petitioner *pro se*
LEILANI J. RODRIGUEZ, ESQ.
Assistant Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter has been referred to me for Report and Recommendation

pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).[1]

## I.    Introduction

        Petitioner Francis Helmer is challenging his August 11, 2002, judgment of

conviction for second degree assault in the Herkimer County Court.  He seeks a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the following grounds: (1)

he unknowingly pled guilty and waived his right to appeal; (2) his conviction was

obtained by a "coerced confession;"[2] (3) his conviction resulted from an unlawful

---

[1] The case was originally referred to the Honorable Gustave J. Di Bianco and was
assigned to me upon Judge Di Bianco's retirement on January 4, 2010.

[2] Although petitioner states that his conviction was obtained by a "coerced confession,"
the description of his claim states that his attorney, the prosecutor, and the judge "coerced"

arrest; and (4) he received ineffective assistance of counsel.  (*See* Dkt. No. 7, Amd. Pet. at 5–6; Ans. at 2).

## II.   Background

### A.   Facts

Petitioner stabbed Jeremy Guyer on January 7, 2008, in the Village of Herkimer, New York, causing Guyer to suffer serious physical injury.  A Herkimer County Grand Jury charged petitioner with Assault in the First Degree (N.Y. PENAL LAW § 120.10 (1)) and Criminal Possession of a Weapon in the Third Degree (N.Y. PENAL LAW § 265.02 (1)).

### B.   State Court Proceedings

Represented by counsel, petitioner pled guilty on July 21, 2008, in Herkimer County Court to Assault in the Second Degree, in full satisfaction of the indictment.  (P. at 2–7).[3]  The plea agreement included a sentence of seven years imprisonment, followed by three years of post-release supervision.  *Id.*  When he entered his plea of guilty, petitioner indicated that he understood that he was waiving his right to appeal the conviction as part of the plea agreement and that he was waiving his right to a jury trial, to cross-examine witnesses, to present witnesses on his own behalf, and to testify in his own behalf.  *Id.*  Finally,

---

petitioner to plead guilty.  This ground appears to be another reference to petitioner's allegedly involuntary plea.

[3] Material cited as "P" refers to the plea minutes and material cited as "S" refers to the sentencing minutes.

petitioner admitted that he "did, in fact, cut, stab Jeremy Guyer." *Id.* at 4–5.

As a result of his guilty plea, on August 11, 2008, petitioner received the agreed-upon sentence of seven years imprisonment plus three years post-release supervision. (S. at 2–6). On that same date, petitioner indicated that he did not wish to appeal his conviction by placing a check on a line next to "I **DO NOT WANT TO APPEAL**" on a form titled "Notice of Right to Appeal," and signing the form along with his attorney. (Ex. A) (emphasis in the original). Petitioner's examination of the form and discussion of its contents with his attorney were noted on the record. (S. at 6).

Over one month later, petitioner filed a Notice of Appeal and a Notice of Motion to Proceed As a Poor Person, dated September 16, 2008. (Ex. B). Plaintiff's papers were returned by the Appellate Division, Fourth Department with a memo dated October 8, 2008, listing the deficiencies in petitioner's papers. (Ex. C). Petitioner then filed a Notice of Motion for Extension of Time for Taking Appeal with an accompanying Affidavit in Support dated November 11, 2008. (Ex. D). In his affidavit, petitioner stated that he was "unaware of [his] legal right's [sic] and, prior to consulting with legal clerks in the prison law library, did not know how to file a pro se notice of appeal." *Id*.

Petitioner's counsel filed a response dated December 4, 2008, stating that "at the time of the plea, the defendant had indicated to [defense counsel] that he did not wish to appeal." (Ex. E). However, defense counsel did not object to

petitioner's motion for an extension of time to file a notice of appeal.  *Id.*  The

Assistant District Attorney filed opposition papers, arguing that petitioner's guilty

plea was voluntary and was beneficial to petitioner.  Petitioner was allowed to

plead to a reduced count of assault in the second degree, in exchange for the

agreed sentence and the waiver of petitioner's right to appeal.  (Ex. F).  Petitioner

filed a reply dated January 7, 2009, arguing that he was "incompetent and

incapable of knowingly, voluntarily and freely relinquishing his right to appeal or

to enter a plea in this matter." (Ex. G at 2).  The Appellate Division denied

petitioner's motion to extend the time to take an appeal on January 22, 2009,

stating that it had considered petitioner's affidavit, defense counsel's letter, and

the district attorney's affirmation in making its decision.  (Ex. H).

Petitioner attempted to file a motion to set aside his sentence pursuant to

N.Y. CRIM. PROC. LAW § 440.20 on April 22, 2009.  (Ex. I).  No opposition was

filed nor was a decision rendered because the motion was not properly filed with

the court, and the court informed petitioner that he did not have any pending or

filed motions.  (Ex. J).

### C.    Federal Habeas Corpus Petition

Petitioner had 30 days after sentencing (September 10, 2008) to file a notice

of appeal before the one-year statute of limitations period began to run, which

expired on September 10, 2009.  *See Bethea v. Girdich*, 293 F.3d 577 (2d Cir.

2002); N.Y. CRIM. PROC. LAW § 460.10; 28 U.S.C. § 2244(d)(1)(A).  Petitioner

filed his pro se habeas corpus petition on June 6, 2009, therefore, his habeas corpus petition was timely filed.  Respondent has filed an answer, memorandum of law, and the pertinent state court records.  (Dkt. Nos. 14, 15, 16, 26).

## III.  <u>Discussion</u>

### A.     Exhaustion

The statute governing habeas corpus petitions requires the exhaustion of state court remedies prior to bringing an application for federal habeas corpus relief.  28 U.S.C. § 2254(b).  A petitioner must either exhaust available state remedies or demonstrate that they are unavailable or inadequate before seeking federal habeas relief.  *Reed v. Duncan*, 326 Fed. Appx. 582, 583–84 (2d Cir. 2009) (citing *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) and *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994)).  It is essential that the federal claim be "fairly presented" to the state courts, meaning that the state courts are "apprised of 'both the factual and the legal premises of the claim,' which also "must have been likely to alert the court[s] to the claim's federal nature.'"  *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982)).

In this case, petitioner pled guilty and signed a waiver of his right to appeal. (Ex. A).  The signed waiver also explained that "If you want to appeal, a **NOTICE OF APPEAL** must be filed with the County Clerk and served upon the District Attorney within thirty (30) days of the date of the sentence." (Ex. A.) (emphasis in

original); *see also* N.Y. COMP. CODES R. & REGS. tit. 22, § 1022.11 (2010); N.Y.
CRIM. PROC. LAW § 460.10 (2010)).  Petitioner did not file a timely notice.  When
he attempted to obtain an extension to file a late appeal, his request was denied by
the Appellate Division, effectively ending his attempt at a direct appeal.  (Ex. H).
Additionally, petitioner's motion to set aside the sentence was not properly filed in
state court, as evidenced by the letter from the Herkimer County Court dated July
13, 2009.  (Ex. J).  Thus, none of petitioner's claims have been properly presented
to the state courts, leaving all of his grounds for habeas relief unexhausted.

**B.    Availability of Remedy**

Having found that petitioner did not exhaust any of his claims, this court
must first consider whether petitioner has any available remedies in state court to
raise the claims that he brings in federal court.  If he has available remedies, his
claims remain unexhausted, and petitioner may return to state court to exhaust
those remedies.  If there are no available remedies, then the court must "deem"
petitioner's claims exhausted and proceed to a procedural default analysis.  *Bossett
v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (citing *Grey v. Hoke*, 933 F.2d 117,
120–121 (2d Cir. 1991)), *cert. denied*, 514 U.S. 1054 (1995).  For exhaustion
purposes, a federal habeas court need not require that a federal claim be presented
to the state court if it is clear that the state court would hold the claim procedurally
barred.  *Grey*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9
(1989)).  If the petitioner cannot return to state court because his claims would be

procedurally barred, the federal court may only determine the merits of such a claim upon a showing of cause for the default and prejudice to the petitioner. *Bossett,* 41 F.3d at 829.  With this standard in mind, the court will turn to an analysis of the grounds presented in this application.

### 1.  Direct Review

The court looks to New York State law to determine whether petitioner has any available remedies.  Petitioner's options are limited.  He has already attempted to bring his claims to the Appellate Division, but that court denied petitioner's request for an extension of time to file a direct appeal, and it is clear that the court considered petitioner's argument that he was "incompetent" and incapable of waiving his rights.  (Ex. H).  Thus, petitioner cannot return to the Appellate Division to exhaust his grounds for habeas relief.

### 2.  Collateral Review

Section 440.10 of the New York Criminal Procedure Law provides for collateral review of various constitutional claims by means of a motion to vacate the judgment.  See N.Y. CRIM. PROC. LAW § 440.10(1)(a)–(h).  However, if the facts supporting petitioner's claims were apparent on the record, "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."  *Aparicio*, 269 F.3d at 91 (citing N.Y. CRIM. PROC. LAW § 440.10 (2)(c)).  *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (holding that "even if no state court had applied section

7

440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas") (citing *Sweet v. Bennett*, 353 F.3d 135, 140–41 (2d Cir. 2003) (applying section 440.10(2)(c) to claims raised for the first time in federal habeas petition), *cert. denied* 129 S. Ct. 130 (2008).

In other words, if the petitioner's claims related to facts that were *on the record*, he would have to have raised them on direct appeal of the conviction, and would not be able to return to state court to file a motion to vacate his conviction or reargue his direct appeal. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(c) (if the record provided sufficient facts to raise the claim on appeal, but petitioner unjustifiably failed to raise the issue, he cannot pursue a section 440.10 claim). Here, the Appellate Division denied petitioner's request for an extension of time to appeal, so he was never able to bring his claims before the Appellate Division.

Unfortunately, the record does not indicate whether petitioner's claims would be procedurally barred from bringing a section 440.10 claim. Petitioner brings his involuntary plea claim, based in part on his claim that his attorney did not represent him properly in conjunction with his statement that petitioner was so medicated that he was not mentally competent to plead guilty. (Pet. ¶ 12(A) & (D)). It has been held that "in some cases" an attack on the effectiveness of counsel *should* be explored on collateral review pursuant to N.Y. CRIM. PROC. LAW § 440.10. *Murden v. Artuz*, 497 F.3d 178, 196 (2d Cir. 2007) (citing New

York case law).  Thus, it is not clear that petitioner would be prevented from returning to state court, and that his claims remain unexhausted.[4]  The court need not proceed further with the procedural default analysis.

This determination leaves the petitioner with unexhausted claims.  The statute provides, however, that an application for habeas corpus may be denied on the merits notwithstanding the failure to exhaust state court remedies.  28 U.S.C. § 2254(b)(2).  Although the Second Circuit has not specifically articulated a standard, lower courts have discussed two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust.  *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 n.4 (W.D.N.Y. 2007) (citing cases).

A majority of lower courts use the "patently frivolous" standard, while a minority of courts use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Sullivan v. Goord*, No. 06-CV-6593, 2010 U.S. Dist. LEXIS 29034, at *11–12, 2010 WL 1257955 (W.D.N.Y. March 26, 2010) (citing *inter alia Colorio v.*

_____

[4] Although the Appellate Division apparently considered what petitioner's claims would have been in denying him leave to file an untimely appeal, this court cannot determine whether the Appellate Division was, by implication, commenting on the merits of petitioner's claims and whether that implication would have prevented petitioner from bringing those claims in any other court.  If this were the case, then petitioner would not be able to return to state court, his claims would be "deemed exhausted," and this court would then determine whether petitioner has shown cause and prejudice for his default.  This court finds that under either analysis, the claims must be dismissed, thus, the court will proceed to consider the merits of the petitioner's claims as if they were simply unexhausted.

*Hornbeck*, No. 05 CV 4984, 2009 U.S. Dist. LEXIS 30488, 2009 WL 811588 (E.D.N.Y. March 3, 2009) (citing both standards); *Naranjo v. Filion*, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, at *30, 2003 WL 1900867 (S.D.N.Y. April 16, 2003) (patently frivolous standard); *Basnight v. Keane*, 99-CV-5907, 2001 U.S. Dist. LEXIS 11155, at *14–15 & n.1, 2001 WL 901139 (E.D.N.Y. July 31, 2001) (non-meritorious standard)).

In finding that a "non-meritorious" standard applied, the court in *Basnight* cited the Supreme Court decision in *Duncan v. Walker*, 533 U.S. 167, 183 (2001). In *dicta* from *Duncan*, the Supreme Court stated that "the AEDPA gives a district court the alternative of simply denying a petition containing *unexhausted but nonmeritorious claims*." *Id.* (emphasis added).  In this case, the court finds that petitioner's involuntary plea claim and other claims may be dismissed on the merits under either standard, notwithstanding petitioner's failure to exhaust the claims in the state courts.

## C.   <u>Guilty Plea</u>

The lynchpin of petitioner's claims is the involuntariness of his guilty plea. With a valid guilty plea as the basis of a conviction, an illegal arrest is irrelevant. The analysis of petitioner's guilty plea is also closely linked with his ineffective assistance of counsel claim, as will be discussed below.

As a general rule, a voluntary and intelligent guilty plea bars the subsequent assertion of constitutional challenges, allegedly occurring prior to the plea.

*Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975).  A guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the individual.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  A plea is considered "'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way," and it is considered "'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."  *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).

It is well-established that "there is no specific series of questions that a state court judge must ask in the course of a plea allocution in order to satisfy due process.  Due process requires only that the courts provide safeguards sufficient to insure the defendant what is reasonably due in the circumstances."  *Hanson v. Debois*, No. 03-CV-5671, 2004 U.S. Dist. LEXIS 4251, 2004 WL 540267, at *6 (S.D.N.Y. Feb. 13, 2004) (citation omitted).  Petitioner may attack the voluntariness of his plea by showing that counsel's advice was not within constitutional standards.  *Lefkowitz*, 420 U.S. at 288.

Claims of ineffective counsel are analyzed according to the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  Petitioner must prove that counsel's representation 'fell below an objective standard of reasonableness' judged by 'prevailing professional norms.'  *Id.  See also Jackson*

11

*v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).  He must then show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Strickland,* 466 U.S. at 694; *Jackson*, 162 F.3d at 85.  In applying this test, a reviewing court must be "highly deferential" and presume that counsel's conduct falls within the range of reasonable performance.  *Strickland*, 466 U.S. at 689.

The same standard is applicable to counsel's performance in the context of a guilty plea.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  To prevail, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 57, 59; *accord United States v. Gonzalez*, 202 F.3d 20, 25 (1st Cir. 2000).

Petitioner in this case appears to claim that he was so heavily medicated at the time of his plea that he was not mentally competent to proceed, and that his attorney acted in concert with the judge and the prosecutor to "coerce" him to plead guilty by "not produc[ing] witnesses that could testify . . . ."  (Pet. ¶ 12(A), (B), & (C)).  Petitioner also seems to claim that he was somehow misinformed about his sentence.[5]  (Pet. ¶ 12(B)).

---

[5] Petitioner alleges that he should not have been adjudicated as a second violent felony offender because his "first offense was a youth [sic] offender."  (Pet. ¶ 12(b)).  It is worth noting that no discussion of youthful offender treatment took place during sentencing, where the court discussed petitioner's prior offense, for which he was sentenced for two counts of second degree assault on June 20, 1996.  (S. at 2–3).  Petitioner was in custody until July 4, 2002 (and

In the plea colloquy, the court referred to a letter dated June 4, 2008, which outlined a proposal from the court. (P. at 2). Petitioner was charged by a Herkimer County grand jury with Assault in the First Degree and Criminal Possession of a Weapon in the Third Degree. (Resp. Mem. of Law at 4). The proposal offered petitioner a sentence of seven years imprisonment plus three years post-release supervision (T. 4–5) in exchange for petitioner pleading guilty to the lesser charge of Assault in the Second Degree. (P. 3). The court also communicated that part of the proposal was that petitioner would waive his right to appeal. *Id.* Although the judge did not specifically ask petitioner whether he was under the influence of any medication, *nothing* in the communication between petitioner and the court indicated that petitioner was having any difficulty understanding the proceedings or the proposal that had been sent to petitioner one month earlier. (P. 3–7).

The court carefully explained that by pleading guilty, petitioner was

---

apparently recommitted to the state correctional facility in 2006. *Id.* The court examined the second felony offender statement, clarified the date of petitioner's release (July 4, 2002), and asked petitioner if there was "anything about [the second felony offender statement] and that conviction and your incarceration period that you convert? Is it correct?" (S. at 3). Petitioner responded, "Yeah, that's correct." *Id.* It is also worth noting that information regarding petitioner's 1996 sentence is also found on the New York State Department of Correctional Services website, which does not include youthful offender records. *See* New York State Department of Correctional Services Inmate Lookup Instructions, http://www.docs.state.ny.us/univinq/fpmsovrv.htm#yo. Petitioner offers nothing more than a vague assertion about his youthful offender status, which is not sufficient to state a claim for federal habeas relief. *See, e.g., Skeete v. New York*, 03-CV-2903, 2008 U.S. Dist. LEXIS 20675, at *5, 2003 WL 22709079 (E.D.N.Y. November 17, 2003) (citing *Maddox v. Lord*, 818 F.2d 1058, 1061 (2d Cir. 1987)).

waiving specific rights such as a jury trial, presenting witnesses, cross-examining witnesses, and testifying in his own behalf. (P. 3–4). The court reiterated, asking petitioner, "You understand you had those rights, but you waive those rights when you enter this plea of guilty?" (P. 4). Petitioner responded that he understood. *Id.* Petitioner also responded affirmatively that he had not been threatened or promised anything else in exchange for his plea of guilty. *Id.* Petitioner demonstrated that he was paying attention when he asked about the restitution. *Id.*

Three weeks later, at his sentencing, petitioner was remarkably alert when he provided the exact date that he had been previously released from the state correctional facility more than six years earlier. (S. 2). When asked if there were any statements he wished to make before sentence was imposed, petitioner responded, "I just wanna say I'm sorry for this accident that occurred. It was wrong, you know." Petitioner said nothing about medication and never mentioned that he did not understand the sentencing proceedings or the proceedings leading up to his previously-entered guilty plea.

The transcripts also show that petitioner discussed issues with his attorney during the plea colloquy and sentencing, and his attorney did not mention that petitioner was having any difficulty understanding the proceedings. (P. 5; S. 5). In his response to petitioner's Motion for Extension of Time for Taking Appeal, petitioner's trial counsel explained that he had advised petitioner to accept the plea agreement to avoid the risk of a "substantially longer period of incarceration," and

that "at the time of plea, the [petitioner] had indicated to me that he did not wish to appeal." (Ex. E). The Notice of Right to Appeal form, signed by petitioner, states that: "Unless you let me know that you want to appeal, I do not have to file and serve the Notice of Appeal." (Ex. A). This statement appears immediately above the line where petitioner placed a check mark next to the statement "I **DO NOT** WANT TO APPEAL." *Id.* (emphasis in original). The sentencing minutes reflect that petitioner reviewed the form with his attorney, filled it out, and indicated that he did not choose to file a notice to appeal. (S. at 6).

As demonstrated above, there is nothing to suggest that petitioner's plea of guilty was anything but knowing and voluntary. On the contrary, "petitioner's conduct at the time of the plea is perhaps the best evidence of his competence." *Gittens v. New York*, 88-CV-2813, 1989 U.S. Dist. LEXIS 7995 (S.D.N.Y. July 14, 1989). The seven-year determinate sentence petitioner received is clearly better than the 10–25 year sentence he would have faced had he gone to trial, which is why petitioner's attorney advised him to accept the offer. *See* Ex. A, *See also* N.Y. PENAL LAW §§ 120.10(1); 70.04(3)(b). Accordingly, this court finds that petitioner's claim that his plea was not voluntary to be patently frivolous and without merit. This court also finds that petitioner's ground that he received ineffective assistance of counsel to be meritless, as nothing on the record even suggests that petitioner's counsel gave him anything but professional and proper assistance. Finally, because petitioner's plea was voluntary, any claim of illegal

15

arrest is not available for federal habeas review.  Therefore, this court recommends that petitioner's claims be dismissed.

      **WHEREFORE,** based on the findings above, it is

      **RECOMMENDED,** that the petition be **DENIED and DISMISSED**.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 3, 2010

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

16